Casualty Company. Your Honor, there is no dispute that on summary judgment the District Court in this case ruled that the claim of misrepresentation by nondisclosure was out of the case at least until further notice. It did it both as to a simple failure to disclose, and it also did it as to a simple failure to make the case public. It also did it based on a theory that each misrepresentation included alleged suppressions of fact. The Court did this for a very specific reason, and that reason was because the plaintiff did not disclose during discovery upon request information with regard to what the suppressed facts were. It not only did not disclose it during discovery, the plaintiffs did not disclose those facts even to the Court prior to the Court's ruling on summary judgment. Subsequent to that, the Court and the Court held in its motion, in its ruling on summary judgment, that because of that, it wasn't up to the defendants to guess, nor was it up to the Court to guess what the suppressions of fact were. At the time that the trial started, there was no knowledge on the part of the defendants, and you have to go back because there's been a lot of briefing and a lot of issues or a lot of water under the bridge, but at the time of the trial, the defense did not know what suppressions of fact were going to be raised at the trial. Indeed, the defense had a reasonable belief that suppression of fact was no longer an issue in the case. Not only do we know that there were going to argue that there were false representations about going after the ag business and things like that. We did know that there were going to be allegations of false representations, but what we did not know is that there was also going to be the allegation that the reason that the defense or the representations with regard to agriculture were wrong was because the defendants had not disclosed all of the pertinent facts such as the law. What would you do? How would you envision they would prove that? I mean, what did you go in thinking they would do? The answer to the question, Your Honor, was, is that the courts, at that time, the only issue in the case was were the actual misrepresentations, were the actual representations that were made at the time true or not true, were the statements made, were they reasonable? How would they establish that? They could establish it, for example, in the agricultural, for example, by saying with regard to that, that they had no intent to pursue the ag business. They had no to, because they had not disclosed this information, was to say you had no intent to pursue the ag group because you knew at the time and you did not disclose to us that you weren't going to have a minimum amount, you had this minimum amount which was above for premium, which was above the minimum amount that we were allowed. That was thrown out by the court. It was thrown out very specifically by the court. In fact, if it was not. You're saying that wouldn't have been admissible evidence, even? It would not have been admissible evidence because there was a motion in Lemonet that was filed prior to the start of the trial with regard to the suppression of evidence claim, and the court held that any, any evidence dealing with suppression of evidence was no longer relevant to those claims because they were out. Further, the court specifically dealt with the specific issue that you're raising right here. On page 49 of the decision on summary judgment, the court said exactly this kind of point, which the court raised. Do plaintiffs merely allege chase? New plaintiffs would not be allowed to write premiums under $10,000 or over $25,000 and fail to tell them. It is not this court's responsibility to ascertain the alleged suppressed statement or statements. Therefore, the court granted summary judgment on this. That claim was gone. That claim was gone as of the time of the trial. As a result of that, as a result of that, despite the fact that it was gone, despite the fact that there was a motion in Lemonet, despite the fact that during the course of the trial, this issue of nondisclosure was again raised. And the court said at that time, and it's in our briefs, the court said at the time, I dealt with the issue at the time of summary judgment based on what I know. If things develop during the trial, I will let you know, and we will deal with it then. We never received notice from the court that suppression was back in the case, never, ever. Not until the final ruling on this case did the court ever notify us that suppression was back in this case, that misrepresentation as a nondisclosure was back in this case. The fact of the matter is, is that the decision of the district court is infused with suppression claims. For example, with regard to the misrepresentation with regard to the commitment of agriculture, the court held specifically that misrepresentation in large part was due to the fact that we did not tell the plaintiffs about limits on the renewal business, that we did not tell the plaintiffs that there was a high risk involved in this endeavor, and that we did not tell the defendants or, I'm sorry, the plaintiffs that we were only anticipating taking about a quarter of Superior Nationals' business. The court held that those were the reasons why the representations that were made with misrepresentations, a suppression claim. The same thing happened with regard to the finding on brokers, on the misrepresentations regarding brokers. The court said that the misrepresentation was because the defendants did not disclose issues which brokers would issues regarding when brokers would be allowed to do business with certain regional offices. Suppression, again. They also said that the misrepresentation was due to a failure to disclose which offices which would handle which kinds of business, high – whether or not it was high risk, and whether or not Kemper intended to take more than a quarter of the business. Those are at paragraphs 19, paragraphs 23, paragraphs 22, paragraphs 20, paragraphs 26 of the Court's findings of fact. The only misrepresentation that was held that did not have a suppression element to it was the one dealing with the mine, the mine operation, and I'll speak to that in a minute. Because we had no notice at any point in time that there was – that these issues were back in the case, we were doubly prejudiced. We were prejudiced, number one, by the fact that we never got discovery on that issue, never got it, because when the summary  of the discovery on that – Sorry. You never got discovery on what? The suppression issues. Well, no, but they were stuff that you knew. I mean, why would you need discovery? Well, we would need discovery on what the claims of suppression were, and then we would need to take discovery on why they believed that, what was said to them at the time, and we never knew what the statements that we suppressed were, that they were alleging were actionable claims of suppression. I guess that – this is my day for conceptual difficulty. I'm sorry? When you're – no, that's fine. It's my problem, not yours. But when you're dealing with a misrepresentation, you have to be able to show it was false. I'm sorry? When you're dealing with a misrepresentation, the plaintiffs have got to be able to show it was false. Yes. And why is it? I guess it's a restatement of Judge Silverman's question, but why is it when you're trying to show a statement is false, you don't show the facts that were known or should have been known to the person or entity that made them, that makes them false? You certainly can't. And give them the intent to make a false statement and so forth. I didn't mean to interrupt you, Your Honor. You certainly can do that. There is a claim of misrepresentation for nondisclosure. There is no question about it. The point here is that that issue was raised on summary judgment. You can certainly say, look, I was – the information was misrepresented to me because you didn't tell me the whole story. You didn't tell me about these other things. You can certainly make that claim. My point is, we – my point is, is that that issue was presented to the district court on summary judgment. The district court granted our motion on summary judgment, and he never told us that he was changing his mind on that issue during the course of the trial to give us an opportunity to respond. We believe that those kinds of misrepresentations were out of the case. And we had a right to rely on that because we had a summary judgment ruling exactly on that point. And the failure here was the Court never said during the course – and this was a bench trial. It was not a jury trial. Well, are any of the findings that you're – that you're troubled with now material to the Court's prime conclusion that there was misrepresentation? I – we believe, Your Honor, respectfully, that if you take out the suppression issues, the entire case falls apart because there's so little left in it. And therefore, because – because if you take out the rulings of the district court on what we should have told them and failed to tell them, there's – there's precious little left in the case. And – and let me go to that directly. The – without the suppression case, with regard to the broker issue, the only statements with regard to the broker issue was the belief that the broker – there were several statements, but the – the essence of it was that Mr. Chase made representations of his – that he liked the broker system, that he hoped it would be maintained over a long period of time. These statements were made on August 1st. At that point in time, Mr. Chase honestly believed exactly what he was saying. There is something that you've heard of and read of about the turf war. But the – Well, Chase may well have, but information that the – the entity for which he was speaking had made those statements arguably not true. There was no evidence to the record, Your Honor, that the statement – Well, okay. Yes. And – and I just want to point that out to you. I understand what you're saying. But the evidence relied upon by the plaintiffs with regard to that is a statement by Mr. Pasquiletto that sometime in June of 2000, that he had information that they were – that this turf war and they were going to take away some of these – the business from these brokers and give it to another regional office. In fact, what Mr. Pasquiletto says, and it's, I believe, at 648 of the transcript, he said absolutely the contrary. He said he had no knowledge at that time that this was going on. I still don't. I have the same conceptual problem. Okay. I think that I still don't understand what the difference is between not intending to do what Mr. Chase said, intending to do the opposite. You say that, of course, you could prove that to make it a fraudulent statement. But what does it add to it that they didn't disclose it? What's the nondisclosure? Oh, the nondisclosures in this – But why does it matter as long as you had the intent to do the opposite? The answer to your question, Your Honor, is, is that what I believe what Mr. – what the argument of the Court was or what the finding of the Court was, was that the basis for the misrepresentation was a – not that we didn't tell the truth, but we didn't give the entire picture. But you gave a misleading – I'm assuming. I mean, the theory is you gave a misleading statement. On which they relied. Because we didn't give them the entire picture. Well, but what you told them was misleading. No, no, no, no. What we told them – the answer to your question, Your Honor, is – What we told them is misleading in light of all the facts. Now, it wouldn't have been misleading if you told them all the facts. But what the – I didn't mean to interrupt. I'm sorry. But the fact that you didn't tell them the facts doesn't change the fact that it was misleading. I understand what you're saying, and I think that we're having a little bit of a disconnect. My point is, Your Honor, that what they were – what we – what we believe that the Court was saying was not that the information that we gave them was wrong or untrue, but that we did not give them the entire story. And because we didn't give them the entire story, then what – then that was the misrepresentation, the failure to disclose was the misrepresentation. It's true that you – it would not have been misleading if you had given them other facts and done other things, but so what? The fact is that it was misleading. And, Your Honor, in response to that respectfully, what we believe is that when the statements were made, they were true. What the Court had a problem with, and it stated specifically in its findings of fact, was we didn't go back and amend and say, by the way, we didn't disclose these – we now know additional things you need to know before you take this job. That's the basis of suppression. And those findings were key to the Court's determination. And because we had no notice that that was going to be an issue in the case, that's where we were prejudiced. And we were prejudiced both as to discovery and we were prejudiced both as to notice, because we never knew that that was going to be part of the case because the Court had taken it out and we were never told that it was back in the case. Let me go specifically to that. For example, on the broker issue, at the time we had the discussion on the broker issue, we did not know that this turf war was going to deprive the regional office that the plaintiffs were working out of, of broker – of the ability to work with brokers. That only came about later. What they're complaining, what the Court was upset about was why didn't you tell them before they took the job? Well, the turf war came about later, but the desire by – I've forgotten the name of the agency – the name that was called, Kemper Chicago Operation. Yeah. To take all the stuff was known. There was a – there was discussion about that, but no decision had been made about it, and the belief of Chase and Pasquiletto at that time was that it wasn't going to happen. And, in fact, there's evidence in the record that even after the conversation with these plaintiffs on August 1st, on August 9th, Chase was having additional conversations where he was saying exactly the same thing, that it was not an issue that the plaintiffs were going to be able to work with their broker – the brokers that they had. So at the time that the statements were made, they were not false. The same is true with regard to the ag statements. The issues that were raised with regard to the change in the template – Did the judges' findings say that they were true at the time and became misleading afterwards? Yes. Yes. The Court specifically said that the failure – that the failure was not informing them prior to the – when they became aware of it and not informing them prior to the time that they became employed. With regard to the ag – Your Honor, I have only 5 minutes left, and I'd like to reserve something for rebuttal, if that's okay. Thank you. Good morning, Your Honor. As Richard Crossman, appearing on behalf of Carl Johnson, one of the plaintiffs in this case, I will take approximately 10 or 15 minutes, and Mr. Doyle will take the balance on behalf of the other plaintiffs. Your Honor, I will try to respond essentially to what the defense counsel has said to the Court here regarding what happened in this particular case. First, I would indicate to the Court that this is a circumstantial evidence case, as the Court noted. And in fact, in the proof of fraud in the inducement in an employment contract, circumstantial evidence is seen particularly in the Locke v. the Clint Eastwood case, Locke v. Warner Brothers. The Court acknowledges that circumstantial evidence is often the only way that you're going to be able to prove fraud in the inducement in any particular case, particularly in the employment context, which is what we have here. The second point I would make, and I will get back to that in just a second, is that counsel makes reference to all of these events and objections regarding supposed evidence that occurred during the trial. I read through the record, and my recollection is that there were two or three relevancy objections made by defense counsel to proffered evidence, one of which is referred to by counsel in their brief regarding high risk. And at that particular time, the Court said, we'll sort this out later, we'll let it in for a limited purpose, and counsel for the defense was invited to consider these issues. He never brought it up again. They talk about the 10 to 15 or the premium requirements for the small ag, which he made a big point as should never have come in in this particular case. At least that's what I interpret he said. I'll indicate to the Court, and I remember the – I tried this case, and I remember it extremely well, that issue was litigated for at least 15 to 20 percent of the presentation that was made by both defense and the plaintiffs during the trial, and not once was there any objection made or any statement made by defense counsel that it was irrelevant and should not be before the Court, not once. In point of fact, the only way we could prove this particular case was essentially through circumstantial evidence. The discovery issue which is brought up here today, I would indicate to Your Honor, it's the first time that I've heard it in this case. In fact, much of what was presented in the plaintiffs' or the defense, excuse me, defense brief in this case, is the first time that we ever heard it, not only as far as the objections made to the evidence at the time of trial, but also to presentation in writing to the Court at the time the case was tried. For example, the negligence issue, which they didn't discuss here today, but which they discussed. They say that we couldn't recover under negligence. They took the position up until the initial appellate brief was filed in this lawsuit that negligence was an issue and that we could recover under a negligence standard. They took it in the pretrial conference order. They took it in the presentation to the Court in the writings prior to trial. They took it in the argument to the Court, and they took it in the final argument. At the very least, they've waived that particular argument. Same thing deals with suppression. Excuse me, I'm losing my voice. In the response brief, the reply brief that the defense presented in this case, they acknowledged that the issue was whether there was an active misrepresentation. The Court defined four issues or four or five issues for active misrepresentation in the pretrial conference order, two of which involved brokers and ag. Was there a misrepresentation for ag, that they were interested in ag? And the context of this is important in the sense that our clients, 50 percent of the Fresno market, as I'm sure the Court can understand, was agriculture. There was a lot of evidence at the trial in that particular case. The broker relationships have been built up for over a period of 20 to 30 years by our clients. They relied upon it. That was the essence of what they were doing in the Fresno area for 20 and 30 years, in the case of my client, for over 30, 35 years. The Court said, and they knew exactly what was going to be tried, the issue is, did you make a misrepresentation on ag? Did you make the misrepresentations on brokers? And they were told exactly what it was. And we were entitled to prove by circumstantial evidence, as Locke says, well, those were untrue. They made clear statements that they were going to do that. Counsel, in their briefs and the proposed findings of fact and conclusions of law that they submitted to the Court, even admitted that those representations were made. So it was our responsibility to show, as the Court has indicated, that they were actively wrong. They were advised, as the evidence will show, the context in which ag was successful. Yet they knew at the time, despite counsel's representations, I will say the record is replete, and the Court found, Judge Ishii found, with reference to the fact that when these representations were made, Kemper had already made the decision that they were going to limit the ag. They were preparing the templates. They were already doing this. I would also indicate to the Court, despite the statements made by, in their brief, that Locke says clearly that post-representation actions by a party can be circumstantial evidence, not alone to prove fraud, but can be circumstantial evidence along with the other context of the fact that there was fraud done at the time that the representations were made. In this particular case, I won't go into the entire record. The Court has it before, and I don't have the time to do that. There was substantial circumstantial evidence to show, to support the Court's position in this particular case, that there was a misrepresentation made on ag and brokers and mine. I think counsel can talk more about mine than I can in this particular case. And the Court made a determination that that was something that should and awarded damages to that extent. Counsel talked substantially about the inability to litigate an issue because they simply didn't know about it. With all due respect to counsel, that's patently untrue that they did, and in regard to litigation at trial. We had nine days of substantial witnesses. There's a representation made in their briefs that they didn't have a chance to talk about the problems of the workers' compensation industry in California in 2000 and 2001 and 2002. That's all they talked about. With all the witnesses, they brought them. They presented exhibits, which I believe are before the Court. I don't know where he gets the fact they didn't talk about it. That's what they did. If you read the final presentation that Mr. Cowden, who was the trial lawyer, makes in this case on December. Now, the proposed findings of fact were submitted in September, and they had all these issues, 42 pages. We didn't argue the case until December. He knows what the issues are. He knows all of that stuff. We've been through nine days of trial. We have a page and a half final argument in which he admits that negligence and fraud is not the issue. What's the problem? It's the status of the workers' compensation industry, and that's the reason that we shouldn't recover. They had ample opportunity to litigate everything. I don't know what they were going to discover. The summary judgment, the pre-summary judgment motion was made late in the case, and the depositions had been taken on those issues before. And like I said, the first time I've ever heard anything about the inability to make any discovery on this case is here this morning. It's clear to me that if he was interested in finding out what the problem is, and  interactions with the workers that he believed were where it went wrong, it surely not presented in what they've submitted in this case in the original briefs. A couple of, one point that I did want to make, Your Honor, with regard, and I think the negligence, they've already admitted that negligence is an issue in the way they handled, they just tried to bring it up now, even though they at least waived it. If the court determines that negligence was an issue, the question of known or should have known, as one of Your Honors indicated a few, is it issue in California? And I would refer to Garamendi, 128 Cal, at 452. They try to argue that the issue of the reasonableness of the representations is not an issue in a fraud and inducement employment case. That's not true. Garamendi quite specifically says it's not only the impact, but it is also whether or not the person that's making the representation reasonably should have known at the time that he made the representation whether it was true or not. And that is a, Garamendi is, frankly, one of the last, it was a 2005 case involving fraudulent inducement for the employment where they found against it on that particular case. Unless Your Honor has some questions, I'll defer to Mr. Doyle. Thank you, counsel. Thank you. Good morning, Your Honor. David Doyle, and I'm with my partner here, Tom Watson, representing Nancy Venner and Virgil Anderson. I was the attorney of record through the entire case. There was no failure to engage in discovery. As usually happens, discovery had been completed before the motion for summary judgment was ever heard. I want to quote from Appellant's reply brief. A claim for misrepresentation, this is on page 3, based on affirmative statements, requires the defendant to actively represent something that is not true. In this case, there were three representations made which were not true. What is confused by opposing counsel is, is the difference between a cause of action for suppression and the fact that you can submit evidence about what you weren't told. And that's what occurred here in this case. The active representations were made regarding agriculture, brokers, and mine. And I would also point the Court to the fact that with respect to mine, which is a separate basis for upholding this judgment, they refer to it briefly on several pages in their brief, opening brief, and the reply brief. And basically they argue that there wasn't reasonable reliance and it should be tied to the Big Bang. In other words, that factually we're incorrect and there isn't substantial evidence to support that. Chase made a representation regarding a subdivision or one aspect of Kemper, which was mined. He said they were competent to be able to perform the procedures that we needed to and we could fire our staff. The fact of the matter was is that Kemper, and Kemper or Lumbermans is the only defendant in this action. And how they try to separate Chase from the company is not legally permissible. What was false about the statement about mine? And with respect to mine, he said that they were basically highly qualified to be able to perform the services, to do all of our backroom work, and we could fire our staff. Why isn't that an opinion? It's a statement regarding a subdivision of the company at that time. It is Kemper saying our subdivision has the ability to be able to perform the services that you need. In what sense was that false when made? It was false when it was made because at the time it was a Florida company. It was a what? It was venued in Florida. So how does that make it false? They had no understanding of the California Labor Code. They had no experience in California workers' compensation law. Their only thing was the fact that they did e-source, which was a failed attempt to have an Internet marketing of workers' compensation. And we have evidence in the record that he did not do the due diligence. But Chase is representing, with respect to mine, a subdivision of Lumberman's and what they can do. So Lumberman's is saying we have this division, this subdivision that can do all of what you need to do to run your workers' compensation business. That was untrue. That was an active representation that was not true. They didn't have experience or knowledge of our Labor Code. They didn't understand California's workers' compensation law. They didn't have staffing. They had ‑‑ and they were sitting in Florida. Now, how do we prove that that active representation was false? In part by what they didn't tell us. It's not a separate cause of action. I didn't see any objections at trial to this evidence coming in. And these offers of proof they keep making about what they would have done and what evidence they would have submitted are hollow, because they don't demonstrate what they would have done. With respect to the TURF law, I'm sure the Court, because they're familiar with this record, it went beyond that. We were told with respect to TURF law that we would get the choice as to whether or not and that the agent would get the choice to pick the new camper versus the old camper. That wasn't true. We were told with respect to this entire process that we were going to be able to keep the broker network that they spent 30 years of their lives building. My clients had a $45 million book of business. A year later, it was $3 million. These representations that were made to us were actively made. It was a dog and pony show. It was recruiting. They recruited us. Mr. Chase, on behalf of Lumberman's, recruited my clients and told them what they would hear and went to Fresno and told over 100 brokers what they wanted to hear. And it wasn't true. I'll be happy to answer any questions the Court may have. Thank you. Thank you. Let me read to you what the Court said with regard to discovery. Defendant has, this is in the motion for summary judgment after discovery had closed. Defendant has presented evidence that plaintiffs were given the opportunity to provide a list of the alleged suppressed facts. Plaintiffs through counsel stated they were unaware of any suppressed facts. In addition, in their opposition, plaintiffs still do not list the alleged suppressed facts. The Court finds the alleged misrepresentations that have been listed by plaintiffs do not necessarily each include a suppressed fact. And to the extent they do, it is unclear exactly what suppressed fact plaintiffs allege was known to Chase at the time of the meetings. It is plaintiff's responsibility to inform the Court and defendant of the basis of their claims. Plaintiffs have offered no specific evidence or even a listing of the alleged suppressed facts to refute defendant's evidence, and there are no alleged, that there are no alleged suppressed facts. The Court declines to assume the basis of plaintiff's claim. At this time, there is simply no basis for a suppression of fact claim. As such, summary judgment is appropriate. There is a lack of discovery in this case. There was a lack of discovery as found by the district court. With regard to the evidence of active misrepresentation, with regard to the all of the issues dealing with agriculture, there is no evidence in the record that at the time the representations were made, that any of them that Chase believed any of them were untrue or that Lumbermans had institutional knowledge that any of them were untrue. The issue was that additional things occurred. This was a very fast-moving situation. Additional things occurred, and that the plaintiff's claim is the active misrepresentation is essentially the failure to disclose. With regard to mine, plaintiff's counsel went way afar afield from what the Court actually found. What the Court actually found was that the statement that was actionable was that mine was competent. End of story. That was the statement that was found. That statement is not enough in itself to support a claim of misrepresentation based upon the cases that were cited in our brief, including the Casella case and the Glenn Holly case. In addition to that, on the issue of negligence, we did raise the issue that because the Court found in its ruling that all of these claims, all of these issues or representations were essentially promises of future conduct, California specifically does not allow a negligence claim for future promises. That's the Tarman v. State Farm case. Now, it is true that that was not raised below, but there is no reason that this Court cannot consider it given the criteria that this Court normally applies. And particularly in this case, where the Court below made findings on issues that it had already granted summary judgment on, it is particularly appropriate for the Court to do a complete review of all of the appropriate cases, all of the appropriate laws to come to the appropriate final decision. With regard to the issue of turf ward nondisclosure, the testimony is clear on that, that there was no evidence in the record, that there was any decision made as to which brokers would be doing business with which regional offices, and in fact, that both Chase and Pasquiletto, the two people who were in charge of this endeavor, believed at the time of the August 1st meeting that the actual, that the dealings with the brokers would be with that regional office. Finally, Your Honor, there is no evidence in this case that there was any reliance on any of these representations. Plaintiffs were not lured away from another job. Plaintiffs did not have another job to go to. You've heard a lot of talk about this managing general agency. But the fact of the matter is, is despite Mr. Johnson saying that these people were like family to him, when they became aware of the, quote, unquote, alleged misrepresentations in October, he didn't even pick up a phone. Didn't even pick up a phone to call. There is no evidence of any kind of reliance on any of these, of these alleged misrepresentations that were made at this time. I appreciate the Court's attention. Thank you very much. Thank you, counsel. Thank you all. The case is here. It will be submitted. The Court will stand in recess for the day. All rise. The score for this session stands adjourned. Thank you.
judges: Reinhardt, Rymer, Silverman